## Fairview Township v. Schaefer

*Michael Jan Janin,* for plaintiff.
*Daniel Brabender,* for defendants.

JOYCE *J.,* September 16, 1988 — This matter is before the court for a determination of issues incident to plaintiff's complaint in equity for preliminary and final injunction relating to defendant's

possession of a live tiger at his residence within Fairview Township.

The first issue to be addressed is that of the jurisdiction of the court to hear plaintiff's complaint. Defendant relies on Title 34 Pa.C.S. §2963 of the Pennsylvania Game Law dealing with the possession of exotic wildlife to argue that this court is without proper jurisdiction because the Pennsylvania Legislature has pre-empted the field by endowing the Pennsylvania Game Commission with exclusive authority over the keeping and maintaining of exotic wildlife. Plaintiff, on the other hand, argues that, as a Second Class Township, Fairview Township has the authority under the Second Class Township Code's safety (53 P.S. §65747) and nuisance (53 P.S. §65712) statutes to protect its citizens from whatever dangerous conditions may exist, and therefore may properly access this court for any actions that may be necessary. The situation is thus originally one of concurrent jurisdiction with plaintiff and defendant relying on equally footed, but different, state statutes to support their respective positions.

Section (b) of Title 34 P.S. §2963, Exotic Wildlife Possession Permits, on which defendant relies states as follows:

"*Shelter, Care and Protection*—No permit provided for in this section shall be granted until the commission is satisfied that the provisions for housing and caring for such exotic wildlife and for protecting the public are proper and adequate and in accordance with the standards established by the commission."

While it is true that this section of the statute generically provides for "protecting the public," the court takes notice that this portion of the Game Law makes no mention of provisions for keeping the un-

wary public away from the tiger, but rather the statute provides only for keeping the tiger away from the public. Specifically, the Game Commission Regulations contained in the Pennsylvania Code at 58 Pa. Code §§147.242—147.246 and 58 Pa. Code §§147.261—147.262 speak only to the health, welfare and safety of the animals. They make no mention of any structure or manner of separating the public from the animal itself. Numerous examples of this type of legislation exist in the Game Law Statute for dangerous, endangered and relatively docile animals. This leads the court to believe that the Game Law exists primarily for the protection and preservation of animals within the commonwealth and only secondarily for the protection and preservation of the general populace.

Further, it appears to the court that a very real danger presently exists that a person, perhaps even an unknowing or curious child, might approach the properly confined tiger and still sustain injury, possibly of a serious nature. For this reason, jurisdiction over the instant matter is found to properly rest with this court.

The second issue to be addressed by this court is whether the keeping of a live tiger in an essentially residential area constitutes a nuisance.

Plaintiff correctly cites *Anderson v. City of Philadelphia,* 380 Pa. 528, 112 A.2d 92 (1955), for the classic definition of a nuisance: That class of wrongs which arise from unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecent, or unlawful personal conduct.

While it may be true that the tiger is neither loud nor offensively odorous nor highly visible so as to attract unsuspecting persons, it is also true that the tiger is an exotic and admittedly undomesticable

animal that in the short span of two years or so will grow to a weight of nearly 600 pounds. As such, despite the inspection and certification of the cage facilities by the Pennsylvania Game Commission, it is difficult to believe that mere chain link fencing would be enough to hold back a 600-pound tiger desiring to free itself from its confines for whatever reason. It should be noted that the tiger, already a healthy 225 pounds, has succeeded in pushing the chain link fence approximately one foot from true vertical so that bulges appear in the fence. It is the court's opinion that while the small chain link cage can at this time hold off the tiger's normal tendency to be free, the fence will be ineffective to withstand the impact of the tiger's body once it reaches maturity (i.e. approximately 600 pounds).

The court need not even resort to predictions of possible catastrophes, as one safety problem presented itself directly to the court during the viewing of the tiger's facilities. At this viewing the court noted that the tiger at one point reached its paw out of the cage and encircled defendant's calf with one of its paws. This type of action presents a very real danger to an innocent onlooker, despite the fact that each of the tiger's paws have been declawed, her rather menacing teeth are intact. In short, the tiger presently possesses the ability to seriously harm an unwary, curious onlooker.

Thus, although the tiger may not fall within the more often recognized categories of nuisance, it most certainly presents a serious risk of harm to all who come into contact with it, even while it is confined to the cage.

The simple fact of the matter is that the tiger constitutes an "attractive nuisance" that will continue to draw children, and others wanting to get a closer look, towards the tiger's cage. Unlike the situation

of a zoo, however, the spectators can walk right up to the animal's cage which remains completely unattended most days of the week from 9:00 a.m. to 5:00 p.m. These risks most certainly rise to the level of an unreasonable use, especially when coupled with the fact that a tiger is definitionally a dangerous, unpredictable and undomesticable animal. This court notes well that an unreasonable use of one's property may certainly constitute a nuisance and that the aforementioned risks must be mitigated or removed altogether in the interest of safety.

The final issue before the court is that of whether the tiger represents a threat to the safety of the residents of Fairview Township to the end that the township may invoke its powers under section 65747 of the Second Class Township Code (53 P.S. §65747) and protect its citizens by requiring removal of the tiger.

Defendant cites *Commonwealth v. Ashenfelder,* 413 Pa. 517, 198 A.2d 514 (1964), for the propositions that (1) 53 P.S. §65747 does not delegate to Second Class Townships extensive police powers, nor does it (2) grant such townships the power to act in areas where the commonwealth has provided comprehensive regulation. This is a correct statement of law, however, *Ashenfelder* is not squarely on point in the instant situation. First, the provision of safety from dangerous and undomesticated animals by a township can hardly be considered an extensive use of police powers in that it accomplishes a basic governmental goal with a minimal amount of governmental intrusions. Second, while it is true that a township, as a subdivision of the commonwealth, must necessarily refrain from acting where the commonwealth has acted to pre-empt the field, it is also true that where the commonwealth has not established exclusive jurisdiction, as in the instant

situation, that the township may take whatever complementary measures are required to accomplish the *commonwealth's* goals.

In this situation, that goal is safety and to the extent that the Pennsylvania Game Commission Regulations do not provide for such safety, it is imperative that Fairview Township fill in the interstices. In this regard, plaintiff's argument that the real threat is not the adequacy of the cage or facilities certified by the Game Commission, but rather that any person could approach the cage, physically touch the tiger and perhaps be severely injured by the tiger, requires the finding that a serious safety problem exists. Thus, to the extent that the Game Commission's regulations do not provide for the safety of such citizens, it is necessary and proper for Fairview Township to invoke the powers granted to it by the legislature through 53 P.S. §65747 relating to public safety.

## ORDER

And now, September 16, 1988, upon consideration of the complaint in equity for preliminary and final injunction filed by plaintiff, Fairview Township, and following a hearing held in this matter on August 29, 1988, it is hereby ordered, adjudged and decreed that the mandatory injunction is granted and that defendant, Dennis L. Schaefer, is hereby ordered to remove the live tiger named "Tanya" from Fairview Township.

It is further ordered that the request for mandatory injunction against defendant, Geraldine T. Whiteman, is denied as it appears that she is no longer an owner of record of the property concerned herein and presently resides out of state.